UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELET GLAUDE,** | Civil Action No. 19-20139 (SRC) |
| **Petitioner,** | |
| v. | OPINION |
| **MR. JAMES SLAUGHTER, et al.,** | |
| **Respondents.** | |

**CHESLER**, District Judge:

Presently before the Court is the *pro se* amended habeas petition of Petitioner Michelet Glaude brought pursuant to 28 U.S.C. § 2254. (ECF No. 3). Petitioner filed a brief in support of his amended petition (ECF No. 10). Following an order to answer, Respondents filed an answer to the petition (ECF No. 11), to which Petitioner replied. (ECF No. 18). Also before the Court is Petitioner's motion seeking an evidentiary hearing. (ECF No. 9). For the following reasons, Petitioner's habeas petition and motion are denied, and Petitioner is denied a certificate of appealability.

**I.  BACKGROUND**

In affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division summarized the relevant evidence presented at trial as follows:

> [Petitioner] was accused of kidnapping his former girlfriend in her own car, beating her and biting off her nipples, threatening to kill her, and pushing her in front of a truck in highway traffic. A jury convicted [Petitioner] of first-degree attempted murder, . . . first-degree kidnapping, . . . second-degree aggravated assault causing serious injury, . . . third-degree terroristic threats, . . . third-degree

1

criminal restraint, . . . and third-degree unlawful taking of a means of conveyance. . . .

. . . .

. . . On July 7, 2009, the police responded to several 911 calls from motorists reporting that a man was assaulting and chasing a woman across Route 78 and into the woods. The first officer on the scene saw an empty vehicle which had apparently crashed into the barrier separating the east and westbound lanes of the highway. He detained and handcuffed [Petitioner] after observing [him] emerge from the woods. [Petitioner] smelled of alcohol. A few moments later, a woman emerged from the woods, appearing dazed and disoriented, with bloodstains high on the front chest area of her blouse. She sat on the curb with her head down and vomited several times. The officer called an ambulance for her.

The victim testified that she and [Petitioner] had a dating relationship for two and one-half to three years, but she had broken up with him in April 2009, before she took a trip out of the country. On July 7, 2009, a friend drove the victim and [Petitioner] to a cell phone store so that she could change her cell phone plan. Then [Petitioner] and his friend dropped her off at her sister's house, where she met her new boyfriend.

At about 10:00 p.m., the victim and her new boyfriend left the sister's house together. The boyfriend departed for his house, and the victim was about to walk home when she saw [Petitioner] sitting in her car parked outside the house. She had not given him permission to drive her car and he had no driver's license. The victim approached [Petitioner], who appeared to be quite intoxicated, and asked him why he was driving her car. He responded that her brother had given him the car keys. After some conversation about whether the victim would get into the car with him, [Petitioner] forced her into the car and started hitting her in the face.

[Petitioner] told the victim that he would take her home, but after he drove past her street, he told her that "we were going to the Belt Parkway in New York so that the both of us can die there." He also told her he was going to kill her because she had a new boyfriend.[] [Petitioner] began driving faster, while restraining the victim with one hand and driving with the other hand on the wheel. As he turned onto the Garden State Parkway, the victim promised to "go back to him" but [Petitioner] told her "it was too late now." At some point [Petitioner] hit the victim in the head and she lost

consciousness or her mind "went blank." She testified that she did not fully regain consciousness until she woke up in the ambulance. At that point, she realized that her lip was bitten and her nipples had been removed; her breasts hurt and were "bleeding a lot."

According to the victim, [Petitioner] drank alcohol on a daily basis. She testified that the entire time she had known [Petitioner] he was often drunk, but he was able to work and otherwise function in his daily life despite his drinking habit. On cross-examination, the victim admitted signing an affidavit stating that [Petitioner] assaulted her because of a "temporary loss of control." She asserted that those were not her words, and that [Petitioner]'s friends had coerced her into signing the document.

The State presented medical evidence corroborating the victim's injuries, including a badly bitten lip and the loss of her nipples. The State presented testimony that the police found what appeared to be two severed nipples inside the victim's car. The medical examiner confirmed that the two pieces of tissue were nipples.

The State also presented testimony from three highway motorists, one of whom saw a speeding car pass him, turn across the express lanes of Route 78 and crash into the concrete median. A second witness saw a man chase a woman across the highway and tackle her. He saw the woman break free and the man catch up with her again and try to push her into oncoming traffic. A third witness testified that as he drove his truck down Route 78, he saw a man push a woman in front of the truck. This motorist swerved and narrowly avoided hitting the woman. All of the motorists pulled onto the side of the road and waited for the police to arrive.

In his testimony, [Petitioner] did not deny any of the charges. In fact, he admitted that he must have done what he was accused of doing, including pushing the victim into the car, biting off her nipples, and trying to kill her. However, he claimed that he was very drunk at the time and was distraught after learning that the victim was seeing another man. [Petitioner] admitted that for two or three days prior to the assault, he had been hearing rumors that the victim had a new boyfriend. He testified that after she was inside the car, he asked her if the rumors were true. He asserted that when she confirmed that she had a new boyfriend he went "crazy," but he claimed that due to his intoxicated state he did not recall what he did to her.

3

However, on direct and cross-examination, [Petitioner] remembered many details of what occurred that day, including events that occurred right before he encountered the victim and events that occurred after he began driving with the victim in the car. He claimed that his recollection only failed concerning the events that happened after she told him she had a new boyfriend.

One of the arresting officers, Trooper Brumer, testified that [Petitioner] told him he had consumed "five beers" that evening between 7:30 p.m. and 8:30 p.m. A contemporaneous police report indicated that [Petitioner]'s breath smelled of alcohol, his eyes were very watery, and his speech was slurred. He swayed somewhat when he walked, but was not falling down. The trooper testified that [Petitioner] was able to complete the Drinking Driver Operator Questionnaire, which was propounded to him in English. When asked how the accident occurred, [Petitioner] told the trooper: "I was driving and lost it." Trooper Brumer concluded that [Petitioner] "had a little too much to drink" and was unfit to drive. He issued him a summons for driving while intoxicated.

An Alcotest administered later, about three hours after the incident, did not show that [Petitioner] was legally intoxicated for purposes of the driving-while-intoxicated (DWI) statute[.] The test showed that [Petitioner] had a blood alcohol content (BAC) of either .062 or .064. Trooper Palshakov, who administered the test, stated that the legal limit for driving while intoxicated is .08. However, he also admitted that alcohol can dissipate in the bloodstream at the rate of between .01 and .02 per hour. Neither side presented expert testimony concerning the probable effect on [Petitioner] of alcohol consumption or of any particular BAC. Palshakov testified that [Petitioner] was calm and appeared to understand the instructions for taking the test. No one who observed [Petitioner] at the time of the incident or immediately afterwards testified that he was prostrate with drink. He was able to drive a car through city streets to the highway, a route he recalled at trial, and he explained to the victim why he was about to kill her.

Several members of [Petitioner]'s family testified about his long history of alcohol abuse, and their unsuccessful efforts to help him overcome his alcohol problem. None of those individuals saw [Petitioner] on July 7, 2009, or observed any of the relevant incidents that occurred on that day.

The judge charged the jury on intoxication as a defense to all of the charges except aggravated assault, to which that defense does not apply.

4

*State v. Glaude*, 2014 WL 6634823 at *1-3 (N.J. App. Div. Nov. 25, 2014).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for the purposes of the statute where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United

5

States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B. Analysis**

In his habeas petition, Petitioner brings two interconnected claims raising ineffective assistance of counsel in which he asserts that his trial counsel was constitutionally ineffective in failing to obtain an expert psychiatric witness in support of both his request for a competency hearing on the eve of trial and a defense asserting that he suffered from diminished capacity as a result of years of alcohol abuse regardless of whether he was intoxicated at the time of his offending conduct. Petitioner also argues, both in his amended petition and a separate motion, that he should be granted an evidentiary hearing before this Court to expound upon these claims. On appeal from the denial of his PCR petition raising these claims without an evidentiary hearing, the Appellate Division rejected both claims and Petitioner's argument that he was entitled to a hearing, explaining as follows:

> Like the PCR judge, we find no merit in [Petitioner's assertions that counsel was ineffective in failing to acquire and present expert testimony]. On a PCR petition, if a defendant claims his trial attorney should have called a witness to testify at trial, the defendant must provide legally competent evidence of what the witness would have said if called at trial. Bald assertions are insufficient to present a prima facie case of ineffective assistance of counsel [sufficient to warrant an evidentiary hearing]. [Petitioner] did not provide the

6

> report of an expert witness to support his PCR claim that, had his trial counsel retained an expert, the expert would likely have provided testimony to support an intoxication defense. Further, neither [Petitioner]'s blood alcohol level nor his trial testimony suggest the likelihood that his trial counsel could have found such an expert.
>
> [Petitioner] also asserted that his trial counsel should have retained a psychiatric expert to support a claim that [he] was not competent to stand trial. He further claimed that his appellate counsel should have raised on appeal the trial court's denial of defense counsel's request for a court-ordered competency examination. However, [Petitioner's] PCR petition was devoid of medical records or an expert report to support his claim that he suffered from a mental illness, much less on that rendered him incompetent to stand trial. In a pretrial hearing, the trial judge questioned [Petitioner] in detail and concluded that there was no basis to order a competency examination. We have reviewed the transcript of the voir dire and find no error in the judge's conclusion.
>
> Like his claim regarding the intoxication defense, [Petitioner's] PCR claims relating to his alleged lack of competency to stand trial were based on bald assertions. [Petitioner] did not provide legally competent evidence that his trial counsel was ineffective in failing to retain experts, or that the experts, if retained, would have provided testimony that could have changed the outcome of the trial. Nor was his appellate counsel ineffective for failing to raise a meritless appellate argument. Having failed to present a prima facie case as to either prong of the *Strickland* test, [Petitioner] was not entitled to an evidentiary hearing on his PCR petition.

(Document 12 attached to ECF No. 11 at 5-6).

The standard applicable to Petitioner's claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also*

7

> *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

8

In his ineffective assistance claims, Petitioner faults his trial counsel for failing to seek out and hire an expert testimony in support of his competency hearing request and intoxication/diminished capacity defense. As in his state court PCR proceedings, however, Petitioner's briefing in this matter is utterly devoid of any competent evidence aside from Petitioner's own opinion that counsel could have procured an expert on his behalf or that any such expert would have provided testimony which would have supported Petitioner's claims that he was either incompetent or suffered from diminished capacity. As noted by the Appellate Division, Petitioner has utterly failed to provide an affidavit or certification from any expert who could have testified on his behalf, nor has he provided any evidence as to what testimony such an expert could have provided. This failure is utterly fatal to his attempt to show that he suffered any prejudice from counsel's alleged failings. *See, e.g., Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001) (failure to present sworn statement or testimony of proposed witness fatal to attempt to show *Strickland* prejudice arising out of counsel's failure to secure that witness's testimony); *Judge*, 119 F. Supp. 3d at 285. Because Petitioner has provided the Court with no evidence that counsel could have procured a viable expert witness in support of his competency and diminished capacity claims, and has in turn provided no evidence as to what testimony could have resulted, he has failed to show that he was prejudiced by counsel's failing, and his claims therefore fail to state a valid basis for habeas relief.

Petitioner, in his motion seeking a hearing and in his rely brief, attempts to salvage his ineffective assistance claims in two ways – first, by asking this Court to provide him the hearing he was denied in state court, and second, by reinterpreting his first ineffective assistance of counsel claim to be a Due Process challenge to the trial court's refusal to hold a competency hearing following its voir dire of Petitioner prior to trial. This Court will address each in turn.

9

The authority of a district court to hold an evidentiary hearing in a § 2254 habeas proceeding is extremely limited as the review of claims addressed on the merits in state courts "is limited to the record that was before the state court that adjudicated the claim on the merits." *Han Tak Lee v. Glunt*, 667 F.3d 397, 405 (3d Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011)). Even where a claim was not heard on the merits, a habeas petitioner will not be entitled to an evidentiary hearing unless he can show that he "was diligent in his attempt to develop a factual basis for his claim in the state court proceedings." *Id.* at 405-06. Here, the state courts evaluated and adjudicated Petitioner's claims on the merits, ultimately concluding that Petitioner's failure to provide any certification or expert testimony in support of his PCR petition or his pre-trial request for a competency hearing prevented Petitioner from making out a *prima facie* case for ineffective assistance of counsel as Petitioner could not establish prejudice without such an expert's testimony or certification. Because Petitioner's claims were adjudicated and denied on the merits, and because Petitioner was in any event responsible for his failure to receive a hearing in so much as he failed to present the required expert testimony or evidence in support of his PCR claims, this Court cannot grant Petitioner an evidentiary hearing. In any event, as his claims are without merit insomuch as he has failed to provide any evidence to support his claims of prejudice, he is not entitled to a hearing regardless. *See, e.g., See Palmer*, 592 F.3d at 395. Petitioner's motion seeking a hearing is therefore denied.

Finally, Petitioner belatedly before this Court attempts to repackage his ineffective assistance of counsel claim related to his request for a competency hearing into a claim that the trial court denied him Due Process by declining to grant him a hearing following his voir dire. Under the Due Process Clause, a criminal defendant has a right "not to be tried while mentally incompetent." *Karenbauer v. Beard*, 390 F. App'x 73, 78 (3d Cir. 2010) (citing *Drope v. Missouri*,

10

420 U.S. 162, 171-73 (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966)). A defendant is considered competent where he is able "'to consult with his lawyer with a reasonable degree of rational understanding' and possess 'a rational as well as factual understanding of the proceedings against him.'" *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). A court need not inquire into a defendant's competency, however, unless the court has "sufficient indicia to believe that a defendant is incompetent to stand trial." *Id.* Where the petitioner fails to provide medical opinions to support his claim of incompetency and there are no clear signs presented by trial counsel or viewed by the trial judge sufficiently indicative of the defendant's lack of understanding of his criminal proceedings, no competency hearing is required. *Id.* at 79-80; *see also Jermyn v. Horn*, 266 F.3d 257, 298 (3d Cir. 2001). Here, the trial judge conducted a *voir dire* of Petitioner, found no indicia that he lacked an understanding of his proceedings or an ability to aid counsel, and determined that no hearing was necessary. Petitioner has presented no evidence – such as a proposed expert's testimony, medical records, or the like – to counter the trial judge's conclusion. As Petitioner has not shown that the trial judge's decision was contrary to the presented facts, and has in any event failed to present any competent evidence to suggest he was in any way incompetent, he has failed to show that he was denied Due Process when the trial court declined to order a competency hearing or attendant psychiatric evaluation.[1] Petitioners claim is thus without merit even in its repackaged form, and he has failed to set forth any valid basis for habeas relief.

---

[1] Likewise, that Plaintiff has failed to show he was prejudiced by the lack of a psychiatric expert related to his competency hearing for the reasons recounted above is in turn fatal to Petitioner's attempt to show that he was denied Due Process when the trial court failed to appoint a psychiatric expert following the voir dire. *See, e.g., Holland v. Horn*, 519 F.3d 107, 119-20 (3d Cir. 2008) (claim that petitioner was denied due process when state court did not appoint a medical expert requires Plaintiff establish that he was prejudiced by that failing by presenting evidence of what testimony the expert could have provided).

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As all of Petitioner's claims are clearly without merit for the reasons discussed in this opinion, he has failed to make a substantial showing of the denial of a constitutional right, and Petitioner is therefore denied a certificate of appealability.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's amended habeas petition (ECF No. 3) is DENIED, Petitioner's motion seeking an evidentiary hearing (ECF No. 9) is DENIED; and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

  s/ Stanley R. Chesler  
Hon. Stanley R. Chesler,  
United States District Judge

Dated: September 16, 2020